UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:18 CR 357 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | <u>ORDER</u> |
| | ) | |
| | ) | |
| BASHEERA PATRICIA PERRY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant's Motion for Sentence Reduction Under 18 U.S.C. §3582(c)(1)(A)(i) For Compassionate Release Due to Covid-19 and Other Circumstances. (ECF # 37). The Government filed an opposition, and Ms. Perry subsequently filed a Supplement to her motion. (ECF #41, 43).

Under the terms of the First Step Act, 18 U.S.C. §3582(c)(1)(A), an inmate may file a request with the court to modify an imposed term of imprisonment for "extraordinary and compelling reasons." Prior to taking such action, however, the inmate is required to request that the Director of the Bureau of Prisons ("BOP") file a motion on his behalf, and to "fully exhaust[] all administrative rights to appeal a failure of the BOP to bring a motion." *Id.* Administrative rights are exhausted when the warden refuses to recommend that the BOP file a compassionate release motion with the court, and the prisoner appeals the denial using the BOP's Administrative Remedy program, or if there has been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Program Statement 1330.18; 28 C.F.R.

1

542(B), The Sixth Circuit has interpreted this to mean that the exhaustion requirement is satisfied thirty days after a warden receives a request by an inmate, regardless of whether any administrative appeals are available or have been pursued. *See, United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). This exhaustion requirement is "mandatory" if invoked by the government and is not subject to any "judge-made exceptions." *Alam*, 960 F.3d at 834. There are no equitable exceptions "to account for irreparable harm or futility," including in cases involving COVID-19. *Id.* at 835-36; *USA v. Minor*, Case No. 20-3467, at 3 (6th Cir. March 2, 2021). The Government does not contest that Ms. Perry requested compassionate release from the BOP and that request was denied on July 1, 2020. Because more than thirty days have passed since the BOP received the request, under Sixth Circuit precedent this motion is properly before this Court.

In order to justify compassionate release a court must: (1) find that extraordinary and compelling reasons warrant a sentence reduction; and (2) consider the applicable §3553(a) factors. *See, United States v. Jones*, Case No 20-3701, at 9 (6th Cir., Nov. 20, 2020). The Sixth Circuit has recently stated that, following the passage of the First Step Act, the policy statements set forth in U.S.S.G. §1B1.13 are not "applicable" policy statements that court must consider in making a decision on a compassionate release motion brought directly by an inmate. *United States v. Elias*, Case No. 20-3654 (6th Cir., January 6, 2021); *Jones* at 13; *Minor* at 2. Therefore, "[u]ntil the Sentencing Commission updates §1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a §3582(c)(1)(A) motion." *Jones* at 13. A "compassionate release decision is discretionary, not mandatory." *Jones* at 9; *Cf. United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010).

The Court recognizes that the COVID-19 pandemic has created a stressful and dangerous environment for everyone, and that the dangers are exacerbated for those in certain categories. It is also clear that people who are confined in closed residential facilities, be it prisons, nursing homes, college dorms, or other similar facilities, are less able to protect themselves from exposure to the virus. Although, as outlined in more detail in the Government's brief, the BOP, has been making adjustments and improvements in their handling of the pandemic as new information comes in, risk factors are re-assessed, and best practices are revised, it is still a difficult to control the spread of the virus within this context. Nonetheless, vaccinations have begun, and the fear of contracting COVID-19 in and of itself is not an extraordinary and compelling reason to reduce an inmate's sentence.

Ms. Perry has stated that she has asthma and has had problems with heavy bleeding that has not been properly addressed during the BOP's response to COVID-19. Although asthma could carry an increase risk for serious consequences if Ms. Perry contracts COVID, it is not one of the ailments that is considered highest risk, and without more is not sufficient to establish extraordinary and compelling reasons for release. Ms. Perry's medical records show that during her incarceration both her asthma and her bleeding issues have been addressed and treated by the BOP. She has not presented evidence that would indicate that these health issues cannot be adequately treated during imprisonment or that they impede her ability to provide self-care within the institution. Neither ailment, alone or in combination is sufficient to show extraordinary and compelling reasons for reducing her sentence.

In addition, even if the Court were to find extraordinary and compelling reasons to consider relief, it must also balance all of the §3553 sentencing factors, including but not limited to, the nature and circumstances of the offense, the history and character of the defendant, the

3

need for the sentence originally imposed, the protection of the community, the avoidance of unwarranted sentencing disparities, and all of the other considerations that went into the original sentencing decision. A fair balancing of the 18 U.S.C. §3553(a) factors, leads to the conclusion that under this set of circumstances, a reduction in sentence would not be appropriate.

Ms. Perry was a Criminal History level VI. She had a twenty-five year history of criminal activity prior to her arrest in this case, consisting mainly of theft and forgery. The conduct giving rise to this case occurred over a span of eight years and amounted to stealing over $1.8 million. She has repeatedly demonstrated that she is not amenable to rehabilitation and is a high risk for recidivism.

In the instant case, Ms. Perry pled guilty to eleven counts of wire and mail fraud, aggravated identity theft, and theft of government property. She was also the leader of the underlying criminal conspiracy. Her guideline range was 120 to 150 months. The Court departed downward to sentence her to 90 months, which it later amended to a total of 114 months because of a mandatory statutory provision requiring certain counts to be served consecutively. Rather than acknowledging the break she received on her sentence, she argues that this sentence is disproportionate that the sentence received by her co-defendant. Her co-defendant (arraigned under a separate case number) did not have a comparable criminal history.

The Court already reduced Ms. Perry's sentence below the guideline range, and below what was contemplated in her plea agreement. (ECF #6). Reducing her sentence further would create an unjustified disparity between her and other defendants with similar charges and criminal history. For purposes of this opinion, the Court considered Ms. Perry's filings, the plea agreement, and the record relating to her pre-sentence report and original sentencing. In addition it balanced all the factors set forth in 18 U.S.C. §3553(a). The factors at play in Ms. Perry's case

4

do not support a sentence reduction in this case. For the reasons set forth above, the Court finds, in its discretion, under the totality of the circumstances, that the Defendant's Motions for Compassionate Release should be DENIED. (ECF#37). IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATE: May 12, 2021